UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JORGE M.,** | Civil Action No. 20-2492 (SRC) |
| Petitioner, | |
| v. | OPINION |
| **WILLIAM J. ANDERSON, et al.,** | |
| Respondents. | |

**CHESLER,** District Judge:

Presently before the Court is the petition for a writ of habeas corpus of Petitioner, Jorge M., filed pursuant to 28 U.S.C. § 2241. (ECF No. 1). Also before the Court are Petitioner's purported motion seeking a temporary restraining order (ECF No. 7), and the parties consent motion to seal Petitioner's medical records. (ECF No. 15). Following an order to answer, the Government filed responses to the petition and TRO motion (ECF Nos. 5, 10), to which Petitioner replied. (ECF No. 6, 13). For the following reasons, this Court will deny the petition without prejudice, will deny Petitioner's TRO motion, and will grant the parties consent motion to seal.

**I. BACKGROUND**

Petitioner is a twenty-four year old native and citizen of Honduras. (Document 1 attached to ECF No. 5 at 1). He illegally entered the United States in or around the year 2000 with his family. (Document 12 attached to ECF No. 1 at 7). In April 2013, the Government commenced removal proceedings against Petitioner. (*Id.* at 2-3). On April 24, 2013, Petitioner appeared with counsel before an immigration judge and conceded the charge of removability, but sought and was granted a continuance to investigate and pursue avenues for relief from removal. (*Id.* at 3).

Although Petitioner was initially taken into immigration custody following the institution of removal proceedings, the Government released him from custody on July 9, 2013, and Petitioner's removal proceedings were transferred to the immigration court's non-detained docket. (Document 3 attached to ECF no. 5 at 1-2). Petitioner's counsel next appeared for a hearing on November 5, 2013, at which point Petitioner's removal proceedings were continued in light of his case's transfer to the non-detained, adult docket. (*Id.* at 2). Petitioner was thereafter scheduled for hearings on February 2015, November 2016, July 2017, and September 2017, but each of these hearings was continued by the immigration court due to various court issues. (*Id.*).

Following Petitioner's arrest and, ultimately conviction, on charges including possession of marijuana, Petitioner was taken back into immigration detention pursuant to 8 U.S.C. § 1226(c) on December 19, 2017, and his removal proceedings were transferred to the detained docket. (Document 3 attached to ECF No. 5 at 2). Following several continuances requested by Petitioner, Petitioner next appeared before an immigration judge on April 4, 2018, at which point Petitioner requested and received another adjournment to permit more time to prepare applications for relief from removal, but was denied bond as the immigration judge found no jurisdiction to grant bond under § 1226(c). (*Id.*). Petitioner then appeared again on May 16, 2018, and filed applications for relief from removal. (*Id.* at 3-4). Petitioner thereafter requested and received a series of adjournments and continuances, leading to his matter being adjourned through March 2019. (*Id.* at 4). On February 19, 2019, Petitioner filed another adjournment, which was denied. (*Id.*). When Petitioner appeared for his scheduled hearing on March 12, 2019, he again requested and was granted an adjournment to April 25, 2019[1]. (*Id.*). Petitioner thereafter requested and received two

---

[1] Petitioner chose to pursue this particular series of adjournments through July 2019 so that he would reach the priority date for his Form I-485 application in the hopes that that application would result in a change in his immigration status. (*See* Document 12 attached to ECF No. 1 at 4).

further adjournments to July 24, 2019. (*Id.* at 4-5). Following his appearance on July 24, 2019, Petitioner's matter was rescheduled for a merits hearing on October 8, 2019. (*Id.* at 5). The Government thereafter requested a short continuance to October 30, 2019, and Petitioner's merits hearing was held on that date. (*Id.*). On November 18, 2019, the immigration judge issued his decision denying Petitioner's applications for relief and ordering Petitioner removed to Honduras. (Document 12 attached to ECF No. 1). Petitioner thereafter appealed his removal order to the Board of Immigration Appeals ("BIA" or "Board"), and that appeal remains pending at this time. (Document 13 attached to ECF No. 1).

Petitioner's medical records indicate that he has made repeated use of the medical department of the Essex County Correctional Facility and has received treatment during his time in the facility. In November 2019, Petitioner received a chest x-ray, apparently as part of a preventative check to determine whether Petitioner had TB. (ECF No. 11 at 1-2). On November 21, 2019, Petitioner went to the medical department and asserted that he believed that he needed glasses as his eyesight was worsening. (*Id.* at 2-3). Petitioner received a vision check which determined that he did have some sight issues, and was referred for an optometry appointment. (*Id.* at 4). On December 11, 2019, Petitioner received an annual medical checkup, during which it was determined that he had no issues other than some minor skin and scalp dryness for which he was provided medicated skin cream and shampoo. (*Id.* at 7-8). Petitioner was also referred for a dental cleaning, which he received on December 13. (*Id.* at 8-9). Petitioner received further dental cleaning in March 2020. (*Id.* at 9).

On April 23, 2020, Petitioner received a COVID-19 antibody test, which indicated that he possessed antibodies suggesting that he both had been exposed to and was recovering from COVID-19. (*Id.* at 10). He did not have a fever or oxygen issues at that time, and specifically

"denied any medical complaints" when questioned. (*Id.*). He was informed of the results, instructed on social distancing and proper cleaning and hydration issues. (*Id.*). Based on this result, Petitioner thereafter received daily vital sign monitoring from April 23 through April 30 with the exception of April 29. (*Id.* at 9-12). Petitioner did not have a fever or other apparent medical issues during this monitoring period. (*Id.*). As a result of his positive antibody test, Petitioner was moved to quarantine, and remained housed there for several weeks in a single occupancy cell. (Document 7 attached to ECF No. 7 at 3). Institutional medical records for the period after April 30 have not been provided.

According to Petitioner, he has previously been diagnosed with both bipolar disorder and anxiety, and has been a smoker for several years. (*Id.* at 2). According to an expert report Petitioner has provided, Petitioner was prescribed medication for his mental issues while in the Facility, but had them discontinued at his request in February 2019 as he felt them no longer necessary. (Document 12 attached to ECF No. 7 at 1). Petitioner's expert report further states that his history of smoking "can lead to lung damage" and that, if Petitioner were to smoke to the point of having sufficient lung damage, such damage could "place him at increased risk for contracting" COVID 19 and could place him at "increased risk" of a more severe illness from the virus. (*Id.* at 1). This report, however, does not clearly state that Petitioner has any such lung damage at this time. (*Id.* at 1-2). A second expert report Petitioner has provided suggest that quarantine and other restrictions at Petitioner's facility could exacerbate his history of mental issues and could cause him a worsen the effects of those issues on Petitioner. (Document 13 attached to ECF No. 7). It is clear from both this report and Petitioner's own certification, however, that Petitioner's mental issues do not arise from COVID-19, and instead are merely likely to be exacerbated in a detention setting. (*Id.*).

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). As Petitioner is currently detained within this Court's jurisdiction, by a custodian within the Court's jurisdiction, and asserts that his continued detention violates due process, this Court has jurisdiction over his claims. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

### B. Analysis

#### 1. Petitioner's *Chavez-Alvarez* claim

In his original habeas petition, Petitioner raised a single claim – that his continued detention without a bond hearing amounted to an unconstitutional application of 8 U.S.C. § 1226(c) in violation of his Due Process rights, a claim which is based on the Third Circuit's rulings in *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 231-35 (3d Cir. 2011), and *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469 (3d Cir. 2015). Although the Supreme Court abrogated the direct holdings of both *Diop* and *Chavez-Alvarez* in *Jennings v. Rodriguez*, 538 U.S. ---, 138 S. Ct. 830 (2018), s*ee Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 278-79 (3d Cir. 2018), both courts in this District and the Third Circuit have recognized that the abrogation of the

constitutional avoidance holdings of *Diop* and *Chavez-Alvarez* did not rob those cases of all precedential authority. *Id.*; *see also Dryden v. Green*, 321 F. Supp. 3d 496, 502 (D.N.J. 2018). Specifically, the Third Circuit has noted that "*Jennings* did not call into question [the] constitutional holding in *Diop* [and *Chavez-Alvarez*] that detention under § 1226(c) may violate due process if unreasonably long." *Borbot*, 906 F.3d 278-29; *see also Dryden*, 321 F. Supp. 3d at 502.

After *Jennings*, it therefore remains the law in this Circuit that the as-applied "constitutionality of [§ 1226(c) detention is] a function of the length of the detention [and t]he constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues," and "any determination on reasonableness [requires a] highly fact specific" inquiry. *Chavez-Alvarez*, 783 F.3d at 474-75; *see also Diop*, 656 F.3d at 232, 234. An alien's immigration detention may thus become an unconstitutional application of § 1226(c) where the prolonged nature of that detention becomes "so unreasonable [that it] amount[s] to an arbitrary deprivation of liberty [which] cannot comport with the requirements of the Due Process Clause." *Dryden*, 321 F. Supp. 3d at 502; *see also Demore*, 538 U.S. at 432; *Chavez-Alvarez*, 783 F.3d at 474. Although "aliens who are merely gaming the system to delay their removal should not be rewarded with a bond hearing that they would otherwise not get under the statute," *Chavez-Alvarez*, 783 F.3d at 476, where an alien's detention becomes unreasonably prolonged merely because he has pursued valid challenges to his removal, his detention may eventually become so arbitrary that the Due Process clause requires a bond hearing at which the Government bears the burden of proving that Petitioner is either a flight risk or danger to the community. *See K.A. v. Green*, No. 18-3436, 2018 WL 3742631, at * 4 (D.N.J. Aug. 7, 2018) (detention of nineteen months in the absence of bad faith on Petitioner's part warranted a bond

hearing where Petitioner was pursuing a valid petition for review before the Third Circuit and had received a stay of removal); *see also Carlos A. v. Green*, No. 18-13356, 2019 WL 325543, at *4 (D.N.J. Jan. 25, 2019) (detention of over eighteen months).

In this matter, Petitioner has been detained pursuant to § 1226(c) for a considerable length of time – approximately two and a half years. While that length of time does raise questions regarding the legitimacy of Petitioner's continued detention, it alone is not dispositive, especially in light of the actual reason for the numerous delays in Petitioner's removal proceedings. Here, Petitioner has been in removal proceedings since April 2013, and admitted at least some of his charges of removability at that time. Despite this, Petitioner does not appear to have filed significant applications for relief from removal until May 2018, five years after his proceedings began and five months after he was placed in mandatory detention pursuant to § 1226(c). Since Petitioner was taken into custody, Petitioner has been responsible for a significant portion of the delay in his immigration proceedings – approximately a year and a half between his placement in detention in December 2017 and the scheduling of his merits hearing in July 2019. Once Petitioner's hearing was scheduled, the Government requested only a short delay of less than a month, after which Petitioner's merits hearing was held. The immigration judge thereafter decided Petitioner's case within three weeks. A month later, in December 2019, Petitioner filed his appeal, which has now been pending for six months. Thus, while Petitioner's detention has been lengthy, the majority of that detention is a direct result of Petitioner's own choice to delay his final hearing until after his priority date had arrived in the hopes that reaching that date might improve his chances before the immigration judge. Petitioner cannot, in this matter, purposely delay his case for a considerable period of time, and then cry foul about the length of his detention where his immigration proceedings are thereafter concluded in a timely fashion. Although Petitioner may

not have acted in bad faith in delaying his proceedings, he cannot now use his delay tactics to secure for himself a bond hearing to which he would not otherwise be entitled. *Chavez-Alvarez*, 783 F.3d at 476. Petitioner's claim that his detention amounts to an unconstitutional application of § 1226(c) is therefore denied.

### 2. Petitioner's COVID-19 related claims

In his motion seeking a temporary restraining order, Petitioner seeks to raise additional claims seeking outright release based on the threat posed to him by the COVID-19 pandemic. Essentially, Petitioner argues that his current conditions of confinement place him at risk of contracting the virus, and that he in any event is at risk of exacerbating his psychiatric issues in light of his placement in quarantine after his positive COVID-19 antibody test. Although the Government acknowledges that the COVID-19 pandemic has posed a unique and substantial threat to public health, it argues that habeas jurisdiction does not exist to address the sort of claim Petitioner seeks to raise. In his reply brief, Petitioner attempts to avoid this issue by arguing that he seeks to raise the issue of his conditions of confinement either as a means of buttressing his *Chavez-Alvarez* claim or as a basis for the "interim relief" of outright release, relief not normally available under *Chavez-Alvarez*, until such time as his *Chavez-Alvarez* claim is addressed by this Court rather than as a stand-alone claim. To the extent Petitioner seeks interim release either via a temporary restraining order, preliminary injunction, or relief pending the outcome of his *Chavez-Alvarez* claim pursuant to *Lucas v. Hadden*, 790 F.2d 365 (3d Cir. 1986), his motion must be denied as this Court has denied that claim on the merits. That said, although Petitioner makes this argument in his reply that he does not seek to expand habeas jurisdiction to cover a conditions of confinement claim, what he is trying to do – bootstrap a conditions of confinement claim to his

*Chavez-Alvarez* claim – is essentially indistinguishable from raising a stand-alone conditions of confinement claim insomuch as he seeks to have this Court release him based on the conditions under which he is housed rather than based merely on the fact or length of his detention.

Neither the Third Circuit nor the Supreme Court have directly permitted a habeas case to proceed on a claim challenging the conditions of confinement rather than the fact, length, or execution of a conviction or detention order. *See, e.g., Jorge V.S. v. Green*, No. 20-3675, 2020 WL 1921936, at *2-4 (D.N.J. Apr. 21, 2020); *Camacho Lopez v. Lowe*, No. 20-CV-563, 2020 WL 1689874, at *4-5 (M.D. Pa. Apr. 7, 2020). Both the Supreme Court and Court of Appeals have suggested, however, that habeas jurisdiction may exist in extreme circumstances to correct unconstitutional conditions of confinement claim where "necessity require[s the] use" of a "habeas remedy," such as release, to rectify the alleged wrong. *Ziglar v. Abbasi*, --- U.S. ---, ---, 137 S. Ct. 1843, 1862-63 (2017); *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973); *Ali v. Gibson*, 527 F.2d 971, 975 n. 8 (3d Cir. 1978) (conditions of confinement claim could give rise "to a possible habeas attack[, which may be] cognizable in a federal habeas action only in extreme cases"), *superseded by statute on other grounds as stated in Callwood v. Enos*, 230 F.3d 627, 633 (3d Cir. 2000). It is thus, at best, unclear whether habeas jurisdiction exists to address a conditions of confinement claim.

Even if this Court assumes, *arguendo*, that jurisdiction exists to consider such a claim as a basis for habeas relief, Petitioner's claim

> could be construed in two fashions – as a claim asserting that [his detention facility and its operators have] been deliberately indifferent to Petitioner's medical needs, or as a claim asserting that the conditions under which he is detained amount to an unconstitutional application of punishment without a supporting conviction in violation of the Due Process Clause. As there is no clear guidance from the Courts of Appeals or Supreme Court on how to adjudicate such claims in light of an ongoing pandemic, many

courts have found that insufficient jail action in light of the virus can serve as a basis for release under [the circumstances], *see, e.g.*, *Rafael L.O. v. Decker*, No. 20-3481, 2020 WL 1808843 (D.N.J. Apr. 9, 2020); *Cristian A.R. v. Thomas Decker, et al.*, No. 20-3600 (D.N.J. Apr. 12, 2020); *Basank v. Decker*, No. 20-2518, 2020 WL 1481503 (S.D.N.Y. Mar. 26, 2020); *Castillo v. Barr*, No. 20-00605, 2020 WL 1502864 (C.D. Cal. Mar. 27, 2020); *Thakker v. Doll*, No. 20-480, 2020 WL 1671563 (M.D. Pa. Mar. 31, 2020); *Malam v. Adducci*, No. 20-10829, 2020 WL 1672662 (E.D. Mich. Apr. 5, 2020); while many others have found that, where the jail takes adequate precautions in light of a given petitioner's medical history, no such relief is warranted. *See, e.g., Dawson v. Asher*, No. 20-409, 2020 WL 1304557 (W.D. Wa. Mar. 19, 2020) (rejecting TRO request because detainees could not succeed on merits of request for relief without at least showing concrete likelihood of actual injury as opposed to mere speculation in light of the legitimate governmental interest in detaining aliens throughout removal proceedings); *Sacal-Micha v. Longoria*, No. 20-37, 2020 WL 1518861 (S.D. Tex. Mar. 27, 2020) (rejecting habeas TRO based on medical conditions of confinement claim as that claim normally must be brought under § 1983, and in any event such a claim is not likely to succeed in the absence of a showing of deliberate indifference to the detainees medical needs); *Lopez v. Lowe*, No. 20-563, 2020 WL 1689874 (M.D. Pa. Apr. 7, 2020) (denying request for TRO by habeas petitioner as he could not establish deliberate indifference to his medical needs).

Turning first to the issue of Petitioner's medical needs, for an immigration detainee to make out a claim for relief based on a jail official's insufficient treatment or deliberate indifference to his medical needs under the Due Process Clause, he must show both that he is subject to a sufficiently serious medical need, and that jail officials have been deliberately indifferent to that need. *See, e.g., Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017); *King v. Cnty. of Gloucester*, 302 F. App'x 92, 96 (3d Cir. 2008). Even assuming that [the threat of] COVID-19 in and of itself is a sufficiently serious need, or that Petitioner's [underlying conditions are] sufficiently serious to oblige the jail to take action to alleviate the risk presented by the virus, success on such a claim would still require Petitioner to show that officials at the jail were deliberately indifferent to that need – i.e. that Respondents "kn[e]w of and disregard[ed] an excessive risk to inmate health or safety." *Natale*, 318 F.3d at 582 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). This requires that the [respondent] was "both [] aware of facts from which the inference could be drawn that a substantial

risk of serious harm exists and . . . dr[e]w th[at] inference." *Id.* Where some treatment or proscriptive action designed to alleviate the medical need has been provided and the dispute is over the adequacy of the treatment or preventative steps taken, federal courts "are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Everett v. Nort*, 547 F. App'x 117, 121 (3d Cir. 2013) (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n. 2 (3d Cir. 1979)). Neither a detainee's subjective dissatisfaction or disagreement with the professional judgment of medical staff as to how best to deal with a medical issue are normally sufficient to establish deliberate indifference. *Hairston v. Director Bureau of Prisons*, 563 F. App'x 893, 895 (3d Cir. 2014); *White v. Napolean*, 897 F.2d 103, 110 (3d Cir. 1990); *Andrews v. Camden Cnty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000).

. . . .

. . . A claim challenging conditions [of confinement] under the Due Process Clause [under the theory that those conditions amount to punishment in the absence of a supporting conviction in turn] has both a subjective and objective component – the objective component requiring a showing that the deprivation involved in the conditions was sufficiently serious, and the subjective component requiring that jail officials act with a sufficiently culpable mind. [*Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979))]. The subjective component can be established by showing an express intent to punish; or by showing that the conditions in question were arbitrary, purposeless, or excessive in relation to the ascribed governmental objective. *Id.* Conditions which are reasonably related to a legitimate government interest and which are not excessive in relationship to that interest will therefore not support a claim in the absence of a showing of an express intent to punish. *Id.* at 67-69. . . . [I]mmigration detention is clearly reasonably related to a legitimate government interest – the Government's interest in securing those subject to removal proceedings pending the conclusion of those proceedings in order to ensure they do not abscond and that they attend those proceedings while also ensuring they are not a danger to the community in the meantime. *See, Dawson*, 2020 WL 1304557 at *2; *see also Jennings*, 138 S. Ct. at 836; *Demore v. Kim*, 538 U.S. 510, 523 (2003); *Zadvydas*, 533 U.S. at 690-91.

*Jorge V.S.*, 2020 WL 1921936 at *2-4.

Having reviewed the record of this matter, it is clear that the conditions under which Petitioner has been contained are neither arbitrary, purposeless or excessive in light of the Government's clear interest in detaining criminal aliens under § 1226(c). The documents submitted in this matter show that the facility in which Petitioner is detained has taken numerous concrete steps to mitigate and alleviate the threat COVID-19 poses to its inmates. These steps include operating well below capacity, reducing the number of immigration detainees in each housing unit, spacing bedding and other furniture to permit detainees to socially distance throughout the day and while sleeping where possible, increased availability of medical staff including having physicians present or on call twenty-four hours a day, twice daily visits to housing units by nurses for symptom reporting, medical screening all inmates during intake for illness and other disabilities including symptoms of COVID-19, health screenings of all staff and others entering the building including temperature checks, increased cleaning and sanitization of the facility, increased availability of soap and cleansers to detainees, limiting or eliminating entrance into the building of outside volunteers and contractors, the provision of masks and other protective equipment to staff, requiring staff to wear masks and gloves at all times, and the provision of masks to any detainees or inmates showing symptoms of infection. (Document 5 attached to ECF no. 5 at 1-15). The facility has also put into place procedures to manage the infected and those exposed to those infected with COVID-19: those claiming symptoms are evaluated immediately via sick calls, with any showing symptoms being given masks; those whose symptoms are mild or limited are treated inhouse and given antiviral medication and placed in quarantine in single occupancy cells for at least fourteen days; those with more serious symptoms are instead transferred to a local hospital for treatment; detainees who are asymptomatic but who have been exposed to the virus are placed in a separate cohorted unit which has "amply room for social distancing" and isolated

for fourteen days during which they are monitored for developing symptoms. (*Id.* at 10-15). Taken together, all of these steps indicate that the facility is taking the threat of the virus very seriously, and has taken significant steps towards reducing the risk posed by the virus and caring for both those who have been infected or exposed and those who have not. This Court thus finds that the conditions under which Petitioner has been housed are not arbitrary, purposeless, or excessive – instead they are specifically tailored to the threat posed by the virus and government issued guidance for detention facilities. As Petitioner has not otherwise shown an express intent to punish him on the part of the facility's staff, Petitioner has failed to show that his conditions of confinement are unconstitutionally punitive. and those conditions serve as no basis for habeas relief.

Petitioner's claim fares no better when construed as a claim asserting that the jail has been deliberate indifferent to his medical needs. Based on the record before this Court, it fully appears that the jail's medical staff have treated Petitioner on each instance that he sought aid, including by medicating him for his psychiatric issues until Petitioner requested that he cease receiving those medications. The jail staff, upon receiving a test that indicated that Petitioner likely had contracted and was in the process of recovering from the COVID-19 virus, placed him in medical quarantine and began conducting daily monitoring of Petitioner's condition. These actions do not indicate deliberate indifference on the part of jail staff either to the general threat of COVID-19 or to Petitioner's specific medical issues. At best, Petitioner appears to want to have his cake and eat it, too – he seeks to fault the jail for not doing "enough" to curb the threat of COVID-19 to him, but then faults the jail for placing him in isolation following his test result – a step taken specifically to curb the threat of COVID-19 – because Petitioner has pre-existing mental health issues which he fears may be exacerbated. Petitioner cannot have it both ways. Taken as a whole, the record

does not indicate any deliberate indifference on the part of jail staff, and instead indicates that Petitioner has received treatment for his medical issues.  Petitioner's claims in his TRO motion therefore fail to state an adequate basis for habeas relief as either stand-alone claims or as bases for interim relief.  Petitioner has thus failed to show any meritorious basis for habeas relief or his release, and both his habeas petition and motion seeking a restraining order are denied.  Given Petitioner's interests in the confidentiality of his medical records, the consent of the parties, and the fact that filings in immigration habeas cases are not presumptively available to the public at large, however, this Court will grant the parties' consent motion to seal Petitioner's medical records.

### III. CONCLUSION

For the reasons stated above, Petitioner's habeas petition (ECF No. 1) and motion seeking a temporary restraining order (ECF No. 7) are denied without prejudice, and the parties' consent motion seeking to seal Petitioner's medical records (ECF No. 15) is granted.  An appropriate order follows.

                                                  s/ Stanley R. Chesler
                                                 STANLEY R. CHESLER
                                                United States District Judge

Dated:  June 16, 2020